Wolfsohn, Appellant, *v.* Solms.

Argued January 6, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Nochem S. Winnet,* with him *Esther Polen, Daniel Lowenthal,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*W. Bradley Ward,* with him *Josephine H. Klein* and *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 17, 1958:

In this action of assumpsit in which the plaintiff seeks to recover from the estate of her deceased husband $15,065 allegedly due for her support and maintenance under a separation agreement, the lower court denied plaintiff's motion for judgment on the pleadings and this appeal followed.

On March 26, 1956, plaintiff and her late husband who were living apart entered into an agreement "to settle the question of [plaintiff's] proper maintenance and support."[1] This contract which was to remain in effect for a period of one year from the date of its execution and which was to be binding on the "heirs, executors, administrators and assigns of the parties," provided, *inter alia,* for payment to plaintiff of $350 a week for maintenance and a maximum of $250 a month for apartment rental.[2] In paragraph eight of the contract plaintiff expressly agreed to "sign the Federal Income Tax Return jointly with [her husband] . . . for the year 1955 and in the future as long as the parties are entitled and permitted to file a joint Federal Income Tax Return." Plaintiff carried out her promise

---

[1] No property settlement was incorporated in this agreement. Paragraph two thereof stated: "This Agreement shall not be construed as in any way severing relationship of husband and wife existing between the parties, nor the obligation and responsibility arising therefrom except as specifically provided for in this Agreement." The following paragraph states that plaintiff has not waived "any property right or interest, whether arising from their marital relationship or otherwise. . . ."

[2] Wolfsohn also agreed to pay for his wife's medical and dental needs ($3,500), the fees charged by her attorney ($3,500), and her federal income taxes. In addition he permitted the plaintiff the exclusive use of their summer home during a part of the year.

and her husband did all that was required of him under the agreement until his death on July 4, 1956. Thereafter, however, the executors and trustees of decedent's estate declined to make further payments contending that the decedent's obligations under the separation agreement terminated on his death. Mrs. Wolfsohn then brought the present action against the estate and, alleging the absence of any dispute of fact, moved for judgment on the pleadings which included her complaint, defendants' answer containing new matter and plaintiff's reply to new matter.

The trial court held that the decedent's estate had no obligation to plaintiff under the agreement, and therefore denied Mrs. Wolfsohn's motion. However, believing that factual issues might be involved in determining whether the estate, (on the theory of promissory estoppel), was under a duty to reimburse plaintiff for her expenditures for rent, the court refused to enter judgment on the pleadings in favor of the defendants. Although the court's order is interlocutory, plaintiff has properly taken this appeal therefrom under the provisions of the Act of April 18, 1874, P. L. 64, §§1, 2, 12 P.S. §§1097-1098. See *Grossman v. Hill*, 384 Pa. 590, 592 n.1, 122 A. 2d 69 (1956) ; *Epstein v. Kramer*, 374 Pa. 112, 120, 96 A. 2d 912 (1953). Under prior practice see, *e.g., Commonwealth Trust Co. of Pittsburgh v. Allegheny Cemetery*, 324 Pa. 78, 80, 84, 187 Atl. 506 (1936).

A husband's obligation to provide maintenance and support for his wife terminates with his death. Defendants argue that the Wolfsohn agreement constituted only an acknowledgment and a mutually accepted measure of the decedent's legal duty, and was therefore not binding upon the husband's estate. See *Patton v. Patton*, 2 Penny. 394 (1882). On the other hand, if the parties to a separation agreement intend

that the husband assume obligations beyond those imposed by law, the obligations will survive the husband's death and so bind his estate. The plaintiff claims that this principle controls the interpretation of the present agreement. *Cf. Huffman v. Huffman,* 311 Pa. 123, 166 Atl. 570 (1933).

Support for both views can be found in the provisions of the agreement before us, but in our disposition of the matter, the conflict must be resolved in favor of the survival of the obligations.

The Wolfsohn contract was more than a mere agreement for maintenance and support. It imposed duties and obligations upon both parties beyond payment and acceptance of support monies. The decedent undertook to perform obligations to his wife additional to those required by law. The plaintiff bound herself to execute jointly with her husband the Federal Income Tax Return for the year 1955 and thereafter. Absent this agreement plaintiff was under no duty to file a joint return, and her promise so to do constituted legal consideration for her husband's undertaking.

Undoubtedly, it was anticipated that by signing the joint returns plaintiff would confer material and important benefits upon the decedent in the form of substantial tax savings. In fact, part of this benefit was realized; Mrs. Wolfsohn executed the 1955 tax return which was due within 20 days after the support agreement was entered into.[3]

The plaintiff has met her obligations under the contract, the estate of her deceased husband must now fulfill his.

---

[3] In view of the size of decedent's estate which was valued at $6,200,000 for federal estate tax purposes, we may safely assume that the filing of a joint federal income tax return for 1955 resulted in a substantial tax saving for the decedent and enhanced the value of the estate.

The order discharging the rule for judgment is reversed, and the record remitted to the end that judgment be entered for the plaintiff for such sum as to right or justice may belong unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.